The next case today is Jessica Fagre v. Jeffrey Parks. Appeal number 20-1343. Attorney Tavares. Yes, thank you, your honors. Good morning. I would ask at the start to reserve one minute for rebuttal time. Yes, you may have it. Thank you. My name is Hunter Tavares. I'm representing the appellant Jessica Fagre in this matter, and we're respectfully requesting that you reverse the lower court's decision granting summary judgment because Amber Fagre, the deceased, was seized by Trooper Parks when he shot and killed her as she was a passenger inside of a SUV that Trooper Parks was intentionally firing at in an attempt to stop the driver and a truck, the SUV. Trooper Parks' conduct in firing at the SUV and the driver is not shielded by qualified immunity and the result that ultimately led to Ms. Fagre's death because Trooper Parks at the time was on a four-foot-high snowbank in a position of safety with an unoccupied police cruiser blocking the escape of the SUV on the narrow dirt roadway. Now, I would turn first to the issue, your honors, of whether there's a Fourth Amendment seizure here, and I understand there's a case from 30 years ago in this circuit, the Landolt-Rivera case, that suggests these facts would not support a seizure under the Fourth Amendment, but that case law, I respectfully submit, is dated and no longer a good case law, particularly in light of the Supreme Court's case in Brendan, which clearly held that what's important is the intent to seize the driver or the vehicle, and that in doing, intentionally doing that, any passengers are also seized as a matter of the Supreme Court. So, in Brendan versus in Landolt, it seemed like, I mean, the police officer knew that there were two people there and there was some intentionality about the fact that he seized the car with the two passengers in it that's missing in these cases. It concerns me trying to hold the police officer accountable for a seizure that he couldn't have he was making. Well, your honor, I suggest the record would show that the officer reasonably should have known that he was making a seizure of Amber, the passenger, as well. The record demonstrates that he had information beforehand that she was a passenger inside the vehicle. He had no information that she was ever removed from the vehicle. While the officer says he did see her in the vehicle at the time he was firing the shots, the record indicates that she was in the passenger compartment when she was shot and killed. But quite a bit of time had passed between when he understood her to be in the passenger seat and when the shooting actually took place. Approximately 17 minutes had passed, and when the officer returned to that same location where he had seen her before in the cruiser, he had no information at that time to suggest that she had been moved. At least I think there's a factual question as well. Except he didn't see her. Right? I think there's a factual question. The car comes barreling at him. He's trying to stop it. He does not see that there is a passenger in the car. He sees that this car is coming toward him. So, why does that make this a Brendlin situation? And whether the officer saw or did not see a passenger in the vehicle, when stopping the vehicle, all passengers are thereby seized, whether the officer was aware there was passengers or not. Brendlin doesn't limit its hold... Five minutes remaining. Thank you. Brendlin doesn't limit its hold, in your honors, to a situation where the officer makes a traffic stop, for example, and knows that there's a passenger in the vehicle. By making a traffic stop, by conducting a road block, by firing into the vehicle, the vehicle is seized and all occupants are seized. That's what Brendlin, my reading of Brendlin... Before we get to that point, I'm still confused. You're making an argument that a reasonable juror could find that the officer did see her? Yes, your honor. Absolutely. Based on the evidence that I've already discussed and the record shows... What are we supposed to do in this case if a reasonable juror... If we concluded that the evidence was such that a reasonable juror could conclude that he wasn't credible in saying he didn't see her, and that given all of the circumstances about where she was, etc, that juror could find that they just don't believe his testimony and they think he did see her. What happens in the case then? I think the case... Then the decision is reversed and the case is remanded for a trial on those... Why, counsel? Why wouldn't he get qualified immunity? Because the question then becomes, from his point of view, can we say no reasonable officer could possibly have not seen she was in the car? The question at that point, your honor, though, is whether no reasonable officer would have fired the shots into the vehicle knowing that she was in the vehicle or should have known that she was in the vehicle. And all the case law indicates that it's only when there's an immediate threat that the officer is justified in using deadly force. And at least there's a factual question here as to whether the officer was in immediate danger when he's on top of a four-foot snowbank. Well, with respect to the... There would be a qualified immunity issue as to whether a reasonable officer could have been worried about the imminent danger he posed upon getting out of the car. I guess my question is, if we thought there was a factual question as to whether he also knew she was in the car, how does that affect the reasonableness of his decision to use deadly force against the driver? If there's a factual question on that issue, then it makes his use of force even more unreasonable in that he... I guess I'm wondering, was there argument about that? I mean, I don't quite see that in the case. In other words, to me, I could see the point that if a juror could find that he knew two people were in the car, then it's more like a Brendlin case, and then arguably that was clear at the time he should have known it was a seizure. Then there's the question of would it have been reasonable to use force? Well, we might think it might have been reasonable to use force or to be worried that he would pose an imminent danger given all he had done and the shots that had been fired and the fact that he's barreling right at them and if he comes out of the car with a gun, what happens even though he's on the snowbank? My question is, does that calculus change? What supports the idea it changes from a qualified immunity perspective if he knows that Amber Fogre is in the car? How does that change it? And what case law are you relying on to suggest that that would change it? Well, ultimately, Your Honor, our position is that it doesn't matter if he... I'm asking if it does matter. Right. How it would change the analysis is that it would make the officer's decision to use deadly force against the vehicle even more unreasonable. What are you relying on to suggest that if he knew she was in the car, what he knows about her is that she was suspected of also doing these house break-ins with him at the time. So I guess I'm just wondering why from a qualified immunity perspective, it's not as if it's a child in the back seat, but it is also somebody that he's saying is not the person he was aiming at. I guess I'm just... What case law helps me figure out about the reasonableness of using force if he knows that two people are in the car rather than just the driver from a qualified immunity perspective? I didn't see anything in your briefing that really addresses that part of the case. And I'm not sure if there is a case that relevant, though, is the case law that talks about a fleeing vehicle itself is not per se green light to use deadly force. And the facts of this case are quite different than the factual cases where the court has upheld qualified immunity for firing at a fleeing vehicle. And all those cases that are cited in the briefs, the officers were an immediate risk. If I could finish the response just quickly. Yes, go ahead. Thank you. In all those cases, the officers were an immediate risk of being run over by the vehicle because there was nothing protecting them from that. This situation is different. We have the snow bank, we have the cruiser, and ultimately whether he knew Ms. Fagre was in the car or not, it really doesn't change the analysis. Okay. Thank you. Thank you. Attorneys to the virus, you may mute your device at this time. And Attorney Bolton, you may proceed. May it please the court. Ms. Fagre's death was an accident. It was a tragic accident to be sure, but it was an accident. The undisputed facts in the summary judgment record show that she was hit by a bullet that was aimed at and intended for her extremely dangerous companion, a person who was armed with a gun, who was driving an SUV towards Trooper Parks at maximum acceleration, whom Trooper Parks knew to have held a nearby resident at gunpoint in his home, and whom Trooper Parks reasonably believed to have just seconds earlier been involved in a gunfight with the other officers on the scene. I'd like to address the issue of his knowledge of whether she was in the vehicle, because I think the record, the summary judgment record is very clear, and I think it's even a little bit stronger than was discussed previously, which is that it wasn't just that he couldn't see her in the vehicle. It was that he could see into the vehicle. He could see the passenger seat and the driver's seat. He saw somebody in the driver, and he saw that the passenger seat appeared to be empty, and the reason for that, we know because of the state's forensic expert, was because Ms. Fagre was not sitting upright in the seat, and we know that from a variety of forensic facts and conclusions that were made during the investigation. He not only couldn't see her, but he would have thought that he was seeing whoever was in the vehicle because he could see the passenger seat. It's very clear, and I think that overcomes any knowledge that he might have had that much earlier in the incident that there was somebody in the passenger seat of that vehicle. The other point with regard to that is that you think a juror could not reasonably find that notwithstanding his testimony, he would have seen her? I'm not sure I follow the question. I'm sorry. Well, I know there's testimony from him that from the officer that he doesn't see her. Correct. Okay. There can't be testimony from anybody in the car about the likelihood that he did see them because they're both dead. Correct. But there is substantial evidence which would suggest that she was in the car at the time of the approach, and I guess I'm saying your position is that it would be unreasonable as a matter of law if a jury found that he did see her. Is that what you're saying? I understand. Yeah, that is our position, and the reason for that, Your Honor, is the only testimony in the record is the testimony of Trooper Parks that he could see the seat, and there appeared to be nobody in it, and I would add that you don't have to take his word for it because there is the forensic evidence which shows that she wasn't sitting upright. It was extremely unlikely that she was sitting upright, and just to be clear, there's actually two separate pieces of evidence that show that. There is the fact of the location of the bullet holes in the car and the entry and exit wounds show that, and also there is the fact that another officer fired a shot into the car from the other side that went right through the space where a passenger would be were they sitting straight up in the car, so there's really overwhelming evidence that she was leaning over, slumped over something, and she was not visible at the time as this vehicle was barreling towards Trooper Parks, so given that... Just to get the lay of the land, prior to the car approaching the snowbank... You say the other shot you're talking about that came from the other side? No, no, no. I'm trying to get a sense of the basis if a juror were to find that he would have seen her in the car or known that she was in the car even if he didn't see her in the car. I'm just trying to get a sense of what the lay of the land was prior to the car approaching the snowbank to get a sense of what a juror could attribute as terms of knowledge of the officer. So she had never been in the car at any point, is that right? I'm sorry, I missed the last thing you said there, I'm sorry. Nothing in the record to suggest that she ever left the car, is that right? That's correct. There's nothing in the record to suggest that she left the car, yes. And when does he, prior to the car approaching the officer here at the snowbank, what's the last thing he knows about the state of things before that car takes off? Does he see him get into the car? He can see, he sees movement. Five minutes remaining. Just to back up a little bit, he sees her in the car 17 minutes earlier when he first arrives at the scene. He leaves the scene to go check on residents. And he comes back, he sees a very different, he hears gunshots, he sees a very different scene where all the vehicles are now gone, except for the SUV. He sees movement that he can't really distinguish. He sees somebody crouched behind a snowbank and he hears gunshots. So he hears what he infers to be a gunfight. He never sees her in the vehicle. And because all the other vehicles are gone, I think it's reasonable for him to have thought that perhaps she was taken away in one of those vehicles. But then that's the fact that he can reasonably think that she's not in the vehicle is confirmed when it then the vehicle pulls out of the parking area, turns towards him, accelerates at maximum acceleration. He looks through the windshield and sees an empty passenger seat. So I think you put that together and you have, I don't think any reasonable jury could reach the conclusion that he could see her. And in fact, we put that in the summary of our statement of material facts that he did not see her at any point between when he returned to the scene and when the incident was over and the plaintiff admitted to that fact. So that's an undisputed fact that was admitted. That's paragraph 86 of the statement of material facts. So I don't think there is any jury question about that at all, Your Honor. And under this court's decision in Landol Rivera, I think the fact that it's clear that the intent of Trooper Parks, objectively manifested intent of Trooper Parks, was to target specifically the armed and extremely dangerous driver of the Durango, that under that decision, this is not a seizure under the Fourth Amendment. It does not implicate the Fourth Amendment. It was an accident and it was not the intent of the officer, as objectively manifested, to harm the passenger in any way. The Brenlin decision that the plaintiff discusses, that does not require this court to overrule its longstanding decision in Landol Rivera. That decision is the culmination of a... We don't have to get to that question in theory, if we conclude that the officer, particularly if all he thought was... The only person he thought was in the car was the driver. If we conclude that at least under qualified immunity, he reasonably could have thought he would be in imminent danger from that driver, even if the car crashed. That's absolutely right, Your Honor. I think you can look at the seizure issue, look at this through the seizure issue and whether there was a seizure, you can look at it whether the force was reasonable or not. I think you're absolutely right. The question of reasonableness, because he didn't know she was in the vehicle, it would just be a pure question of was it reasonable to use deadly force against Mr. Bailey. That would be the only thing the court would have to decide here. I think the evidence is overwhelming that that would be a reasonable use of force. I think this court's decision in the McGrath case is directly on point. I think the situation here was quite a bit more dangerous than in McGrath. Just to make sure I understand the facts of this, one last factual point. I know your opponent characterized it as a fleeing vehicle or an escaping vehicle, but if I understand the circumstances, am I right that what was appeared to happen would be that the Durango might crash and not be able to leave the scene? To me, that might bear on how reasonable it would be to use force because of the risk that he would then get out and use it directly against him. That's correct, Your Honor. The way this unfolds, Trooper Parks is originally taking cover behind the rear of his cruiser, which is pointed towards the Durango. As it becomes clear the Durango is going to ram the front of his cruiser, he moves quickly to his left onto the side of the road. As the Durango is colliding or about to collide with the Durango, he shoots six to seven shots. The Durango pushes the vehicle back about 50 feet. The cruiser turns sideways. You can see it in some of the photos in the summer judgment record. It gets wedged into a snowbank. At that point, the engine of the Durango is revving, but it can't go any further because the cruiser has essentially gotten wedged into the snowbank and is preventing it from being pushed any further backwards. At that point, the driver is trapped. Deadly force was used against the driver as a result after he refused to comply with police commands and appeared to be reaching for a weapon inside the vehicle. It was a situation where he was cornered. Your brother seems to argue that hiding behind a snowbank is adequate regardless of the fact that the cruiser was there. What do you say to that argument? First, just one clarification. I know the district court described it as hiding behind a snowbank. What he actually did was climb on top of a snowbank, so he wasn't actually behind the snowbank. He was on top of it. My response to that is the record shows and it's undisputed that when the Durango crashed into the cruiser and pushed it backwards and both vehicles go by him, they passed within two to three feet of where he's standing on that snowbank. I would submit that that is way too close to say that he's in a position of safety at that point. If the collision causes the cruiser to jackknife or something like that, it could push it into around the Durango and he veers into the snowbank. That snowbank is not going to protect the trooper at all. I would submit that that is a threat of serious bodily injury. The threat is from the threat posed by the car while it's driving to him at the time he shoots. That's where you think the threat is. I think that's part of the threat. The other threat is the fact that Mr. Bailey was armed. The trooper reasonably inferred that he had just been involved in a gunfight with the other officers. As the district court held, it was reasonable for Trooper Parks to be afraid that Mr. Bailey would attempt to shoot him either as he was approaching or going by or after, as you mentioned, he becomes cornered essentially and gets out of the car and potentially there's a second gunfight. Thank you, Your Honor. Thank you. Thank you, Mr. Bolton. You can mute your device at this time. This is as far as one minute of rebuttal. Thank you again, Your Honors. I just want to address briefly the factual issue about whether a juror could find that the trooper knew that Amber was in the passenger seat. Moments before this shot happened or these shots happened, Chief Brown, who was right there on the scene, saw Amber in the passenger seat. The trooper says he saw an empty passenger seat. He doesn't say he see anyone in it. He said he saw an empty passenger seat. Seconds later when the vehicle crashes, she's sitting in the passenger seat, passenger compartment. So whether he, I think it would be up to a jury to decide whether when he looked in there if he did not see what was in there seconds later when the vehicle came to a stop. And I also thought about the qualified immunity analysis and whether the officer did actually know that Amber was in the vehicle. I think it does change it because if he is using force that seized her by killing her when she is not the threat, that absolutely would be a Fourth Amendment violation and not protected by qualified immunity. There was no information that she ever was involved in a gunfight, had a gun, she was not driving the vehicle. And even if he didn't intend to shoot her and he was aiming at the passenger, by shooting and seizing her, even if it wasn't intentional, that's what Brenlin talks about, that it's still nonetheless a seizure. Thank you. Thank you. Thank you. That concludes the argument in this matter. Attorney Zovaris and Attorney Bolton should disconnect.